UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CR-80061-RS

UNITED STATES OF AMERICA

vs.

STANLEY LAPLANCHE,
      Defendant.
_____/

## FACTUAL PROFFER

The United States Attorney's Office for the Southern District of Florida ("this Office") and (hereinafter referred to as the "defendant") agree that the following facts prove beyond a reasonable doubt that the defendant committed three separate acts of unlawful delivery of ammunition to a common carrier in violation of 18 USC § 922(e) and 924(a)(1)(D), such that

1. the Defendant knowingly and willfully delivered or caused to be delivered a package or container containing ammunition to a common or contract carrier;
2. that the package or container was intended for transportation in foreign commerce;
3. that the package or container was intended to be transported to someone other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector; and
4. the Defendant did not provide written notice to the carrier that multiple rounds of ammunition were being transported or shipped.

On October 18, 2019, West Palm Beach Border Enforcement and Security Task force (BEST) inspected a 2004 Suzuki SUV, VIN: JS3TY92V144101342, that was destined to be exported to Haiti. The exporter of the vehicle was listed as Stanley LAPLANCHE (DOB: 06/25/1961 - COC: USA) on shipping manifest Dock Receipt # 179749, when it was provided to Monarch shipping in Riviera Beach, Florida in the Southern District of Florida on October 7, 2019. During the inspection agents discovered and seized approximately 7,900 rounds of ammunition secreted in a freezer discovered within the Suzuki's cargo. In total, agents seized the following ammunition from the Suzuki: 9 mm ammunition – 6,700 rounds; .380 auto ammunition – 600

rounds; .40 cal. ammunition – 200 rounds; and .38 special ammunition – 400 rounds, from this 2004 Suzuki.

BEST members discovered that LAPLANCHE had recently delivered and presented for export to Haiti two other vehicles to Haiti and that the two vehicles were still in-route to Haiti. BEST members provided Monarch Shipping with a re-delivery notice for the two vehicles and LAPLANCHE'S two vehicles were returned to the Port of Palm Beach for inspection.

On October 29, 2019, BEST members inspected the two additional vehicles that were presented for export by LAPLANCHE. The first was a 1999 white Mitsubishi Montero, VIN: JA4MR51R2XJ007323. The shipping manifest Dock Receipt # 179553 indicated it was delivered to Monarch shipping in Riviera Beach, Florida in the Southern District of Florida on September 23, 2019. During the inspection of the 1999 white Mitsubishi, agents discovered and seized, secreted in a freezer within the 1999 white Mitsubishi, the following: approximately 8,750 rounds of 9 mm ammunition; and 1,700 rounds of 12-gauge ammunition. The second vehicle delivered for export by LAPLANCHE was a 1997 black Mitsubishi Montero, VIN: JA4MR41R9VJ007326. The shipping manifest Dock Receipt # 179483, indicated the 1997 black Mitsubishi was provided to Monarch shipping in Riviera Beach, Florida in the Southern District of Florida on September 18, 2019. During the inspection, agents discovery and seized, secreted in another freezer within the 1997 black Mitsubishi's cargo, the following: 30,850 rounds of 9 mm ammunition; 1,100 rounds of .40 cal. ammunition; 1,000 rounds of .380 auto ammunition; 800 rounds of 45 cal. ammunition; and 750 rounds of .38 special ammunition.

A total of approximately 52,850 rounds of ammunition was seized from LAPLANCHE'S three vehicles. A review of all three sets of shipping documents revealed that LAPLANCHE did not advise Monarch Shipping, the common carrier, that he was shipping ammunition.

LAPLANCHE consented to an interviewed that occurred in a Walmart parking lot after he was advised by agents about the munitions investigation. LAPLANCHE said he received money from people in Haiti via Western Union and Money Gram, some of which he used to purchase the vehicles and goods and the rest he kept as fees for his services. LAPLANCHE also stated that he purchased and exported the vehicles in his own name, and that he had towed the vehicles to the port for export.

Agents showed LAPLANCHE three sets of shipping documents obtained from Monarch Shipping, Dock Receipt numbers 179749, 179553, and 179483, for the 3 vehicles. LAPLANCH acknowledged that he did, in fact, complete the requisite paperwork for the vehicles to be exported and that the signatures on the various forms were, in fact, his. The agents told LAPLANCHE that a total of over 50,000 rounds of ammunition were seized from the three vehicles and asked LAPLANCHE why the ammunition was not included on any of the contents lists. LAPLANCHE explained that he only wrote on the contents lists what he was directed to by the customer or the customer's family.

The agents asked LAPLANCHE if he purchased the ammunition that was discovered in the three vehicles. LAPLANCH stated that he did buy some of the ammunition found in the three vehicles. When asked for whom he bought the ammunition, LAPLANCHE replied that he purchased the vehicles and some of the ammunition for a person in Haiti. LAPLANCHE stated he purchased some of the ammunition from Walmarts in Miami Gardens and Miami, Florida. LAPLANCHE stated that he knew buying and sending the ammunition was illegal, but that he did it to earn extra money. He also acknowledged that he saw signs posted Monarch Shipping that advises customers that shipping ammunition is prohibited.

U.S. Customs and Border Protection ("CBP") mailed LAPLANCHE a Notice of Seizure and Information to Claimants NON–CAFRA Form ("Notice of Seizure") for each of the aforementioned two separate seizures of ammunition on October 18, 2019 and October 29, 2019. Each Notice of Seizure sets forth four options for a potential claimant, and those options are also reflected in the "Election of Proceedings" Form that was included with each Notice of Seizure. One option provides that the claimant may abandon any claim or interest in the property, which in this case, involved the seized ammunition. The Notice of Seizure advises that, if a claimant chooses this option, Box #3 on the Election of Proceedings form should be checked and the completed form returned to CBP.

LAPLANCHE completed and signed each Election of Proceedings form, and sent all three executed forms to CBP, copies of which are attached to the plea agreement. On each Election of Proceedings form, LAPLANCHE checked Box #3 indicating that he was abandoning any claim or interest in the seized ammunition.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 9/21/2020     By: *Gregory Schiller*
GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

Date: 9/21/2020     By: _____
D'AMEKA DAVIS, ESQ.
ATTORNEY FOR DEFENDANT

Date: 9/18/20     By: _____
STANLEY LAPANCHE
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CR-80061-RS

UNITED STATES OF AMERICA

vs.

STANLEY LAPLANCHE,

      Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty the information, which charges the defendant with three counts of unlawful delivery of ammunition to a common carrier in violation of Title 18, United States Code, Sections 922(e) and 924(a)2 (1)(D).

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing

2

Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to five (5) years, followed by a term of supervised release of up to three (3) years as to each count. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 (USD) as to each count.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, pursuant to 18 U.S.C. Section 3013, a special assessment in the amount of $100 as to each charge will be imposed on the defendant. The defendant agrees that this special assessment shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations

3

contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or

the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

8.   The defendant agrees as part of this plea agreement to abandon to the United States Customs and Border Protection all right, title, claim, and interest to the property identified on the attached Notice of Seizure forms (attached hereto as Exhibits 1 and 2).

9.   The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case.  Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing.  The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291.  However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights.  By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney.  The defendant further agrees, together with this Office,

to request that the Court enter a specific finding that the defendant's waiver of his right to appeal the sentence imposed in this case was knowing and voluntary.

10. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

Date: 9/21/2020   By: *Gregory Schiller*
GREGORY SCHILLER
ASSISTANT UNITED STATES ATTORNEY

Date: 9/21/2020   By: _____
DAMEKA DAVIS, ESQ.
ATTORNEY FOR DEFENDANT

Date: 9/18/20   By: _____
STANLEY LAPANCHE
DEFENDANT